# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| BELLSOUTH TELECOMMUNICATIONS, LLC,<br><br>    PLAINTIFF<br><br>v.<br><br>LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT,<br><br>  Serve: Mayor Gregory Fischer<br>  Metro Hall/4th Floor<br>  527 W. Jefferson St.<br>  Louisville, KY 40202<br><br>    DEFENDANT. | CIVIL NO. _____ |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff BellSouth Telecommunications, LLC, doing business as AT&T Kentucky ("AT&T"), states as follows for its complaint against defendant Louisville/Jefferson County Metro Government ("Louisville Metro"):

### NATURE OF THE CASE

1. On February 11, 2016, Louisville Metro adopted an ordinance that purports to permit third parties to perform work on AT&T's communications network, in some cases without so much as prior notice to AT&T. Under the new ordinance, where a third party seeks to attach equipment to a utility pole in the rights-of-way and AT&T already has lines or other equipment on the pole, the third party may remove, alter, and relocate AT&T's facilities as it deems necessary. If the third party believes its work on AT&T's facilities would not cause or reasonably be expected to cause a customer outage, the third party need not notify AT&T before

1

conducting such work. If, on the other hand, the work would cause or reasonably be expected to cause a customer outage, the third party may proceed after giving AT&T thirty days notice.

2. AT&T seeks declaratory and permanent injunctive relief to restrain Louisville Metro from enforcing this new ordinance. The ordinance conflicts with and is preempted by the pole attachment regulations of the Federal Communications Commission. In addition, Louisville Metro had no authority to adopt the ordinance, because Kentucky law gives the Kentucky Public Service Commission exclusive jurisdiction to regulate pole attachments.

### JURISDICTION AND VENUE

3. This action arises under the laws of the United States, specifically 47 U.S.C. § 224, a provision of the Communications Act of 1934 as amended ("Act"), and the Supremacy Clause of the federal Constitution. The Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over AT&T's state law claims pursuant to 28 U.S.C. § 1367.

4. The Court also has diversity jurisdiction under 28 U.S.C. § 1332. There is complete diversity between the parties, as AT&T is a citizen of Delaware and Texas, and Louisville Metro is a citizen of the Commonwealth of Kentucky. The amount in controversy exceeds $75,000. Among other things, the economic value of the rights AT&T seeks to protect exceeds $75,000, and if relief is denied AT&T will suffer losses in excess of $75,000.

5. The Court's authority to grant declaratory relief and related injunctive relief is based upon 28 U.S.C. §§ 2201-2202 because an actual controversy exists.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Louisville Metro ordinance at issue was enacted and AT&T's claims arose in this judicial district.

**PARTIES**

7. Plaintiff BellSouth Telecommunications, LLC, doing business as AT&T Kentucky, is a limited liability company. At all times relevant, AT&T has been and is qualified to do business in Kentucky.

8. Defendant Louisville Metro is a consolidated local government organized pursuant to the provisions of Kentucky Revised Statutes Chapter 67C, with the capacity to sue and be sued.

**STATEMENT OF FACTS**

9. AT&T is a wireline telecommunications carrier that provides telephone and other communications services in Louisville and Jefferson County, among other places. In order to provide these services, AT&T and its predecessors have invested millions of dollars over more than one hundred years to construct, maintain, repair, replace, and operate an extensive communications network throughout Louisville and large portions of the Commonwealth of Kentucky, among other states.

10. A significant portion of AT&T's communications network in Louisville and Jefferson County consists of aerial telephone lines and associated equipment placed upon utility poles in the public rights-of-way. AT&T's authority to occupy the public rights-of-way in Louisville and Jefferson County stems from an irrevocable, perpetual, *statewide* franchise granted by Kentucky's General Assembly in 1886, not a franchise granted by Metro Louisville. The vast majority of the poles used by AT&T are owned by either AT&T or Louisville Gas & Electric ("LG&E"), an electric utility with which AT&T has had a contract for the joint use of utility poles since 1917.

11. On February 11, 2016, Louisville Metro adopted Ordinance No. O-427-15 (the "Ordinance"). (A copy is attached.) The Ordinance amends § 116.72 of the Louisville Metro Code of Ordinances, which governs "rights-of-way management and facilities requirements" for communications providers. Among other things, the Ordinance adds new subsection (2) to § 116.72(D), governing "third party facilities."

12. That new subsection grants an "Attacher" the right to perform all of the "make-ready work" required to rearrange or relocate the pre-existing physical facilities and pole attachments of other communications providers (including AT&T). It states that "[u]pon approval of an Attachment Application [by the pole owner], Attacher may relocate or alter the attachments or facilities of any Pre-Existing Third Party User as may be necessary to accommodate Attacher's Attachment using Pole Owner approved contractors." Where the affected communications provider does not own the pole (*e.g.*, where the Attacher wants to move AT&T facilities located on an LG&E pole), the Attacher need not obtain the consent of the affected provider to move that provider's facilities.

13. Further, the Ordinance requires the Attacher to provide prior notice to the affected provider only if the Attacher concludes its work would cause, or would reasonably be expected to cause, a customer outage: "the Attacher will not effectuate a relocation or alteration of a Pre-Existing Third Party User's facilities that causes or would reasonably be expected to cause a customer outage . . . without first providing thirty (30) days written notice to the Pre-Existing Third Party User." LCMO § 116.72(D)(2). "In the event the Pre-Existing Third Party Users of such other facilities fail to transfer or rearrange their facilities within thirty (30) days from receipt of notice of relocation or alteration of a Pre-Existing Third Party User's facilities that

4

causes or would reasonably be expected to cause a customer outage, Attacher may undertake such work." *Id.*

14. The Ordinance thus purports to permit a third party (the Attacher) to temporarily seize AT&T's property, and to alter or relocate AT&T's property, without AT&T's consent and, in most circumstances, without prior notice to AT&T. AT&T would be deprived of the opportunity to assess the potential for network disruption caused by the alteration or relocation, and to specify and oversee the work on AT&T's own facilities to ensure any potential for harm to its network – and the continuity and quality of service to its customers – is minimized. Further, in the event there is network trouble during or after the Attacher's work, AT&T may be hampered in locating and correcting that trouble if it does not even know the work is occurring, or is unaware that work has already been completed (during the 30-day period the Attacher has to provide notice of completion of the work).

15. The pole attachment rights and obligations created by the Ordinance are a drastic departure from, and conflict with, those set forth in federal regulations promulgated by the Federal Communications Commission ("FCC"). The Act authorizes the FCC to "regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable," and it directs the FCC to "prescribe by rule regulations to carry out the provisions of this section." 47 U.S.C. § 224(b)(1), (2).

16. Under the FCC's regulations, an entity with existing attachments, including AT&T, is entitled to prior written notice in the event any make-ready work would affect the entity's facilities. 47 C.F.R. § 1.1420(e). No such notice is required under the Ordinance unless the Attacher unilaterally determines that the Attacher's planned relocation or alteration of AT&T's facilities will "cause[] or would reasonably be expected to cause a customer outage…."

5

LCMO § 116.72(D)(2). Under the FCC's regulations, the entity with existing attachments, including AT&T, has up to 60 days (and potentially more, depending upon the type of facilities and size of the order) to modify its attachments to accommodate a new attacher. 47 C.F.R. § 1.1420(e). Further, under the FCC's regulation, a new attacher may hire a contractor to complete the make-ready work itself only if the work has not been completed by the specified deadline. 47 C.F.R. § 1.1420(i). Under the Ordinance, except where the Attacher determines the planned work may reasonably be expected to cause a customer outage, the Attacher may relocate or alter AT&T's facilities without providing AT&T notice and the opportunity to relocate or alter its own facilities. LCMO § 116.72(D)(2).

17. While in some circumstances 47 U.S.C. § 224 permits a state to override the FCC's pole attachment regulations, Kentucky law denies Louisville Metro any such authority and instead vests the Public Service Commission of Kentucky ("PSC") with exclusive authority to regulate utility pole attachments. In particular, Kentucky law gives the PSC "exclusive jurisdiction over the regulation of rates and service of utilities." KRS 278.040(2). The PSC's jurisdiction "extend[s] to all utilities in" Kentucky. *Id.* In *Kentucky CATV Association v. Volz*, 675 S.W.2d 393 (Ky. App. 1983), the Kentucky Court of Appeals affirmed the PSC's determination that the PSC's exclusive jurisdiction over utility rates and service under this section extends to attachments on utility poles. The court noted that "[p]oles are an essential part of the facilities of most regulated utilities," and it concluded that "[w]e must agree with the finding by the PSC that the rates charged for pole attachments are 'rates' within the meaning of KRS 278.040, and that the pole attachment itself is a 'service' within the meaning of the statute." *Id.* at 396.

**FIRST CLAIM FOR RELIEF**
**The Ordinance Is Preempted By Federal Law**

18.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 17, inclusive, as though fully set forth herein.

19.     In adopting its pole attachment regulations, the FCC acted upon a developed record and made findings regarding the reasonableness and appropriateness of its mandated procedures and timelines.  In doing so, the FCC drew specific lines to weigh and balance various competing interests, including the public interest in giving utilities and telecommunications carriers sufficient time to perform make-ready work to ensure safety and reliability.

20.     The Ordinance conflicts with the procedures created by the FCC, and upsets the careful balances struck by the FCC in crafting its pole attachment regulations.

21.     The Ordinance is inconsistent with federal law, including 47 U.S.C. § 224 and the pole attachment regulations promulgated by the FCC, and thus is preempted by and rendered invalid and unenforceable by Article VI, Section 2 of the Constitution of the United States.

22.     Unless the Court declares the Ordinance invalid and permanently enjoins Louisville Metro from enforcing it, AT&T will suffer irreparable harm that cannot be redressed by recovery of damages.  For example, AT&T will be forced to comply with a preempted ordinance, will be improperly subjected to regulators at multiple levels of government, and will suffer a loss of customer goodwill.  A permanent injunction will advance the public interest as defined by Congress and the FCC.

23.     AT&T is entitled to a judgment declaring the Ordinance invalid and unenforceable, and a permanent injunction restraining Louisville Metro from enforcing, or authorizing any third-parties from acting pursuant to, the Ordinance.

## SECOND CLAIM FOR RELIEF
### The Kentucky PSC's Jurisdiction To Regulate Pole Attachments Is Exclusive Under Kentucky Law

24. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 23, inclusive, as though fully set forth herein.

25. Under Kentucky law, the PSC is vested with exclusive authority over the regulation of rates and service of utilities and telecommunications carriers such as AT&T. KRS 278.040(2).

26. In exercising its exclusive jurisdiction over utility rates and services, the PSC has determined that attachments on utility poles constitute a "service" subject to its exclusive jurisdiction under KRS 278.040(2) and that the regulation of the terms and conditions of utility pole attachments is subject to the PSC's exclusive jurisdiction over rates and services.

27. The Ordinance impermissibly intrudes upon the PSC's exclusive jurisdiction over utility rates and service under Kentucky law, and is invalid and unlawful.

28. Further, the PSC implements its exclusive jurisdiction over utility rates and services through KRS 278.160, which requires utilities to provide their service in conformity with their filed tariffs. To the extent that the Ordinance permits an Attacher to attach its facilities in contravention of LG&E's or AT&T's filed pole attachment tariffs, the Ordinance not only invades the exclusive jurisdiction of the PSC, but is directly contrary to the PSC's exercise of that jurisdiction in approving the pole attachment tariffs.

29. Unless the Court declares the Ordinance invalid and permanently enjoins Louisville Metro from enforcing it, AT&T will suffer irreparable harm that cannot be redressed by recovery of damages. For example, AT&T will be forced to comply with a preempted ordinance, will be improperly subjected to regulators at multiple levels of government, and will

suffer a loss of customer goodwill. A permanent injunction will advance the public interest as defined by Kentucky law.

30. AT&T is entitled to a judgment declaring the Ordinance invalid and unenforceable, and a permanent injunction restraining Louisville Metro from enforcing, or authorizing any third-parties from acting pursuant to, the Ordinance.

### THIRD CLAIM FOR RELIEF
### The Ordinance Exceeds Louisville Metro's Authority Under State Law

31. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 30, inclusive, as though fully set forth herein.

32. Pursuant to Kentucky law a consolidated local government such as Louisville Metro is granted the same authority as counties and cities of the first class. KRS 67C.101.

33. Such authority is limited to ordinances that are not in conflict with state statutes and are not inconsistent with law. An ordinance conflicts with a state statute if it is expressly prohibited by statute, or if there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes.

34. By vesting the PSC with exclusive jurisdiction over utility rates and services, including utility pole attachments, the Kentucky General Assembly has prohibited other Kentucky governmental entities, including Louisville Metro, from regulating utility pole attachments. Further, the Kentucky General Assembly through enactment of Chapter 278 of the Kentucky Revised Statutes, and the PSC through its exercise of its exclusive authority over utility rates and services, including utility pole attachments, have enacted a comprehensive scheme for regulating the provision of service, including utility pole attachments, by utilities and telecommunications carriers such as AT&T.

35. The Ordinance seeks to legislate matters committed to the exclusive jurisdiction of the PSC, and it conflicts and is inconsistent with the comprehensive regulatory scheme of utility rates and services, including pole attachments. The Ordinance is an invalid and *ultra vires* exercise of Louisville Metro's authority under state law, including but not limited to KRS 67C.101.

36. The Ordinance is also inconsistent with the applicable FCC regulations governing pole attachments, including those described above.

37. Further, the Ordinance, adopted as an amendment to existing Chapter 116 of the Louisville Code of Ordinances, is inconsistent with law in violation of KRS 67C.101, as it was not adopted in accordance with the requirements of applicable law, including the requirement to specifically repeal the chapter or section containing the Ordinance's former language and to substitute a new chapter or section containing the desired amendment in its place.

38. Unless the Court declares the Ordinance invalid and permanently enjoins Louisville Metro from enforcing it, AT&T will suffer irreparable harm that cannot be redressed by recovery of damages. For example, AT&T will be forced to comply with a preempted ordinance, will be improperly subjected to regulators at multiple levels of government, and will suffer a loss of customer goodwill. A permanent injunction will advance the public interest as defined by Kentucky law.

39. AT&T is entitled to a judgment declaring the Ordinance invalid and unenforceable, and a permanent injunction restraining Louisville Metro from enforcing, or authorizing any third-parties from acting pursuant to, the Ordinance.

**PRAYER FOR RELIEF**

WHEREFORE, AT&T prays for relief against Louisville Metro as follows:

10

1. For a declaration and judgment that the Ordinance conflicts with and is preempted by federal law;

2. For a declaration and judgment that the Ordinance is unlawful under applicable law, and that Louisville Metro exceeded its authority in enacting the Ordinance, because the Ordinance impermissibly intrudes upon the exclusive jurisdiction of the Kentucky Public Service Commission and its adoption was not a valid exercise of Louisville Metro's authority under state law;

3. For a permanent injunction restraining Louisville Metro from enforcing, or authorizing any third-parties from acting pursuant to, the Ordinance;

4. For an award of AT&T's costs; and

5. For such other and further relief as the Court may deem just and proper.

Dated: February 25, 2016

/s/ *Douglass Farnsley*
Mark R. Overstreet (moverstreet@stites.com)
STITES & HARBISON, PLLC
421 W. Main St.
P.O. Box 634
Frankfort, KY 40602-0634
Telephone: (502) 223-3477

Philip W. Collier (pcollier@stites.com)
Douglass Farnsley (dfarnsley@stites.com)
Bethany A. Breetz (bbreetz@stites.com)
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400

*Counsel for BellSouth Telecommunications, LLC*

Christian F. Binnig (cbinnig@mayerbrown.com)
Hans J. Germann (hgermann@mayerbrown.com)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600

*Of Counsel for BellSouth Telecommunications, LLC*
(*Motions for admission pro hac vice to be filed*)

1073160:3:LOUISVILLE